563 A.2d 202

**PENNSYLVANIA TURNPIKE COMMISSION, Appellant,**

**v.**

**Susan JELLIG and Bernard Jellig, her husband; Christopher Kiernan; Norman Cogliaitti; Stabler Construction Company; Eastern Industries, Inc., D.B.S. Transit Company; Michael Baker, Jr., Inc.; Leco Corporation; and John J. Wolf; Commonwealth of Pennsylvania, Department of Transportation, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1988.

Decided July 25, 1989.

Petition for Allowance of Appeal Denied April 23, 1990.

Joseph J. Musto, with him, Susan M. Rooney, Griffith, Aponick & Musto, Wilkes–Barre, Gabriel L.I. Bevilacqua, with him Leslie P. Hitchings, Saul, Ewing, Remick & Saul, Philadelphia, for appellant.

Lawrence Ludwig, Michael J. Donohue, Henkelman, Kreder, O'Connell & Brooks, William E. Wyatt, Jr., Scranton, Timothy J. Holland, Wilkes–Barre, James J. Doherty, Jr., Esq. James M. Howley, Esq. Scranton, Thomas Devlin, Deputy Atty. Gen., Harrisburg, Anthony J. Piazza, Thomas

J. Nolan, Scranton, Robert Schaub, Rosenn, Jenkins & Greenwald, Wilkes–Barre, Michael Roth, Scranton, for appellees.

David L. Lutz, Angino & Rovner, P.C., Harrisburg, Pa., for Pennsylvania Trial Lawyers Ass'n, amicus curiae, for appellees.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, BARRY, COLINS, PALLADINO and McGINLEY, JJ.

DOYLE, Judge.

Before us for consideration is a petition for review filed by the Pennsylvania Turnpike Commission (Commission) under the procedural scenario set out in the official note to Pa.R.A.P. 1311.[1] That petition sought, first, a review of the lower court's order refusing to certify an interlocutory order for appeal by permission pursuant to Section 702(b) of the Judicial Code (Code), 42 Pa.C.S. § 702(b), and second, a review of an earlier order of the court which denied a motion for summary judgment filed by the Commission. In denying the motion for summary judgment, the trial court ruled that the Commission was not entitled to assert the defense of sovereign immunity. Also before us is a motion

---

1. The note to Rule 1311 reads in pertinent part as follows:

     Where the administrative agency or lower court refuses to amend its order to include the prescribed statement [certifying a controlling issue of law to allow an appeal by permission of an interlocutory order, otherwise unappealable], a petition for review under Chapter 15 of the unappealable order of denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion of the lower tribunal. If the petition for review is granted in such a case, the effect ... is the same as if a petition for permission to appeal had been filed and granted, and no separate petition for permission to appeal need be filed.

     As is more fully explained in the text of this opinion, the Commission sought an amendment from the trial court which was denied. Hence, its petition for review under Chapter 15 of the Rules of Appellate Procedure was the proper procedure to employ. *Commonwealth v. Boyle,* 516 Pa. 105, 532 A.2d 306 (1987).

to quash the petition for review filed by Susan and Bernard Jellig (the Jelligs) who were plaintiffs in the action below.

This action was commenced when the Jelligs filed a complaint against the Commission, and others, on May 16, 1984, alleging that Susan Jellig was a passenger in an automobile travelling in a northerly direction on the Northeast Extension of the Pennsylvania Turnpike in Whitehall Township, Lehigh County, when, on July 20, 1983, a collision occurred between their car and a vehicle owned by one of the defendants. The Jelligs alleged that the Commission was an entity created by Section 4 of the Act of May 21, 1937, P.L. 744, *as amended*, 36 P.S. § 652d. They further alleged that the Commission routed northbound and southbound traffic into adjacent lanes without providing a barrier between the lanes, and permitted traffic to flow through an unsafe area that was under construction creating an "inherently dangerous condition" which caused injury to Susan Jellig. The parties underwent extensive discovery and on July 17, 1987, the Commission filed a motion for summary judgment on the basis that sovereign immunity applied to it pursuant to Sections 8501–8564 of the Judicial Code, 42 Pa.C.S. §§ 8501–8564. The lower court denied the motion on March 1, 1988.

Following the lower court's interlocutory order denying summary judgment, the Commission filed an application to amend the lower court's order to include the language found in Section 702(b) of the Code, 42 Pa.C.S. § 702(b)[2], allowing an appeal of an interlocutory order by permission. By order dated March 22, 1988, the lower court denied the

2. Section 702(b) provides:
   **Interlocutory appeals by permission.**
   When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

motion to amend.[3]   The Commission then filed a petition for review with this Court following the direction of the official note to Pa.R.A.P. 1311, seeking immediate review of the trial court's order refusing to certify the issue as a controlling issue of law, and a review of the denial of summary judgment on the immunity issue.   The Jelligs subsequently moved to quash the petition for review on the grounds that the lower court's March 1 order was a "final Order and no interlocutory appeal may be taken."   By order of April 18, 1988, this Court granted the petition for review which permitted the appeal from the interlocutory order by permission, listed the issue of the denial of summary judgment for oral argument, and stayed the case in the lower court pending resolution of the appeal on the merits.

There is a two-step process to our approach to this appeal. We must first decide the threshold issue presented by the Jelligs' motion to quash, and second, we must decide the merits, *i.e.*, whether the Commission is protected by sovereign immunity.

■   The Jelligs argue that a petition for review filed pursuant to Section 702(b) of the Code is not a proper means of seeking review in this case because the March 1, 1988 order denying the defense of sovereign immunity to the Commission was not an interlocutory order, but was a *final* order from which a direct appeal should have been taken.   We disagree.   It is well settled that the denial of a motion for summary judgment is an interlocutory order. *See Thorn v. Newman,* 113 Pa.Commonwealth Ct. 642, 538 A.2d 105 (1988).   We have also held that there is no appeal as of right in the case of a denial of a motion for summary judgment.   *See* Pa.R.A.P. 311; *Nordmann v. Commonwealth,* 79 Pa.Commonwealth Ct. 187, 468 A.2d 1173 (1983). In the case *sub judice,* there was a denial of a motion for partial summary judgment;   thus the appeal *is* from an

---

**3.**   See note 1.   The parties are not disputing that the trial court denied the motion to amend the March 1, 1988 order.

interlocutory order.[4]  Accordingly, the Jelligs' argument that a direct appeal should have been taken is misplaced.

■ We have held, furthermore, that when a petitioner files a petition for review alleging that the trial court order failed, or that the trial judge refused, to include the language allowing an interlocutory appeal by permission prescribed in Section 702(b) of the Code, this Court's grant of that petition seeking review by permission has the same effect as if a petition for permission to appeal had been filed and granted. *Nicholson v. M & S Detective Agency, Inc.*, 94 Pa.Commonwealth Ct. 521, 523 n. 2, 503 A.2d 1106, 1107 n. 2 (1986); *see* Pa.R.A.P. 1311, official note.  Thus, the petition is properly before us in any event and the Jelligs' motion to quash is, accordingly, denied.

The next issue we address, in order to reach a determination on the merits, is whether the Commission is a "commonwealth party" entitled to the protection of sovereign immunity, a "local agency" entitled to the protection of governmental immunity, or neither without any such protection.  The Commission contends, *inter alia*, that it is entitled to sovereign immunity under 1 Pa.C.S. § 2310,[5] and Section 8522[6] of the Code, 42 Pa. C.S. § 8522, or, in the

**4.** The Jelligs cite various cases to support their view that a denial of a motion for summary judgment is a final appealable order;  however, the Jelligs miss the mark by citing cases which *do not deal* with denials of a motion for summary judgment.

**5.** Section 2310 pertinently provides:
  **Sovereign immunity reaffirmed: specific waiver**
  Pursuant to Section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

**6.** Section 8522(a) provides:
  **Exceptions to sovereign immunity**
  (a) **Liability imposed.**—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for

alternative, that it is entitled to governmental immunity under Section § 8541 of the Code, 42 Pa.C.S. § 8541.[7] The Jelligs, on the other hand, argue that the Commission is neither a local government agency nor a commonwealth party, but is a "statutorily created independent entity" with no entitlement to any tort immunity whatsoever.

■ The Commission is a Commonwealth party within the intendment of Section 8522. "Commonwealth Party" is defined in Section 8501 of the Code, 42 Pa.C.S. § 8501, as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." "Commonwealth agency" is not defined in Chapter 85 of the Code,[8] which deals with sovereign, governmental and official immunity, but is defined in Section 102 of the Code, 42 Pa.C.S. § 102, which is the general definition section for the entire Code. Section 102 defines "Commonwealth agency" as "[a]ny executive agency or independent agency." "Independent Agency" is defined in Section 102 as "[b]oards, *commissions*, authorities and other agencies and officers of the Commonwealth government...." (Emphasis added.)[9] It thus is clear, and we

damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

7. Section 8541 provides:
   **Governmental immunity generally**
   Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

8. 42. Pa.C.S. §§ 8501–8564.

9. The Pennsylvania Turnpike Commission is a "commission" pursuant to 36 P.S. § 652d. Section 652d provides:
   **Turnpike Commission created; powers and duties; salaries**
   That there is hereby created a commission to be known as the "Pennsylvania Turnpike Commission" and by that name the commission may sue and be sued, plead and be impleaded, contract and be contracted with, and have an official seal. The commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike

accordingly hold, that the Commission is an independent agency under Section 102 and hence a Commonwealth agency and a Commonwealth party within the meaning of Section 8522. *Accord Rhoads v. Lancaster Parking Authority,* 103 Pa.Commonwealth Ct. 303, 520 A.2d 122, *petition for allowance of appeal denied,* 515 Pa. 611, 529 A.2d 1084 (1987) (municipal parking authority is a *local* agency for purposes of immunity); *Toombs v. Manning,* 835 F.2d 453 (3rd. Cir.1987), (indicating that the legislative history for the 1978 immunity legislation specifically notes that the Pennsylvania Turnpike Commission is an "independent agency" within the meaning of the statute.)

The Jelligs rely on *Specter v. Commonwealth,* 462 Pa. 474, 341 A.2d 481 (1975), which the trial court cites as authority for its conclusion that the Commission is an entity, distinct from the Commonwealth and, hence, does not enjoy sovereign immunity. The reliance of the lower court and the Jelligs on *Specter* is misplaced. *Specter* is no longer controlling in light of statutory history and case law.[10]

Before 1973, both the Commonwealth and political subdivisions enjoyed immunity. In 1973, the Pennsylvania Supreme Court abolished the common law doctrine of governmental immunity thus subjecting political subdivisions to liability for the negligent performance of governmental duties. *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973). Thus, subsequent to *Ayala,* political subdivisions could not claim an immunity defense whereas the Commonwealth could. This meant that deciding whether the immunity bar applied to the designation of "political subdivision" or "Commonwealth" or neither, became, for the first time, all important. In 1975, the Supreme Court decided *Specter.* In its opinion, the court indicated that while it would have liked to abro-

shall be deemed and held to be an essential governmental function of the Commonwealth....

**10.** For an excellent discussion on the history of sovereign immunity in Pennsylvania, see *Toombs,* 835 F.2d at 457–60.

gate the immunity doctrine as applied to the Commonwealth, much as it had already abrogated the immunity doctrine as it applied to local bodies, it believed that it could not do so because it viewed sovereign immunity (as distinguished from governmental immunity) as being mandated by the Pennsylvania Constitution rather than by common law. It is clear, however, that the Court looked with great disfavor upon the immunity bar. It thus ruled for purposes of the immunity bar that the Turnpike Commission was an "independent agency," not the Commonwealth.

Were it not for the subsequent changes in the law, we would concede that *Specter* controlled here. What occurred, however, was that in 1978 the Supreme Court abrogated the doctrine of *sovereign* immunity in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978). It was able to do so because it determined, contrary to its position as set forth in *Specter*, that sovereign immunity was not constitutionally mandated but was, instead, a product of common law. The legislature's reaction was swift; *Mayle* was handed down on July 14, 1978. The legislature enacted a sovereign immunity statute effective September 28, 1978, only two and one-half months after *Mayle* was decided. *See* the Act of September 28, 1978, P.L. 788. As a further response, the legislature also enacted legislation providing for limited governmental and official immunity. See The Political Subdivision and Tort Claims Act, Act of November 26, 1978, P.L. 1399, *formerly* 53 P.S. §§ 5311.101 through 5311.803. Two years later it repealed and reenacted these Acts [11] and similar provisions now appear in Chapter 85 of the Judicial Code.

Further, the definitional provision in Section 102 of the Judicial Code had become effective in June of 1978 and it

---

**11.** The Act dealing with sovereign immunity was repealed and reenacted by Section 221(g) of the JARA Continuation Act of 1980, Act of October 5, 1980, P.L. 693. The Act dealing with governmental immunity was repealed and reenacted by Section 333 of the JARA Continuation Act of 1980, 42 Pa.C.S. § 20043.

too evidenced a legislative intent, as earlier discussed, that independent commissions such as the Turnpike Commission are to be viewed as part of the Commonwealth government. Thus, it can be seen that while *Specter* was never overruled, the legislature has acted so as to, in effect, reverse that decision. The trial court thus committed an error in relying upon the case.[12]

The Jelligs and amicus curiae argue in their briefs that the intent of the legislature in passing the 1978 sovereign immunity provisions was to restore immunity to the Commonwealth agencies which had enjoyed it immediately prior to the *Mayle* decision in 1978 and thus not extend immunity to the Turnpike Commission, which had not been immune from suit since *Specter* in 1975. They argue that the language in 1 Pa.C.S. § 2310 supports this view [13] and

12. The amicus curiae, the Pennsylvania Trial Lawyers Association, in its brief filed on behalf of the Jelligs, incorrectly rely on *Pennsylvania Turnpike Commission v. Atlantic Richfield Company,* 482 Pa. 615, 394 A.2d 491 (1978), to support their view that *Specter* applies in this instance. *Atlantic Richfield* was concerned with a cause of action that predated *Mayle,* and stands for the proposition that the Commission should not enjoy the *common-law* exemption from the statute of limitations. The issue before us now does not deal with common-law immunity or the statute of limitations, but rather deals with the statutory sovereign immunity, and exemptions therefrom, in tort actions against the Commonwealth and its agencies as created by the Pennsylvania Legislature. Further, the amicus brief cites the Commission's argument in *Philips Brothers Electrical Contractors, Inc. v. Pennsylvania Turnpike Commission,* 77 Pa.Commonwealth Ct. 26, 465 A.2d 60 (1983), to demonstrate that in the past the Commission itself argued that it was not a part of the Commonwealth. This Court in *Philips Brothers,* and its antecedent decisions, determined the Commission to be the "Commonwealth" for purposes of our appellate jurisdiction as contrasted with our original jurisdiction. That decision did not involve in any way the issue of sovereign immunity but rather, it involved an issue of rights under a performance bond under the Bid Withdrawal Act, Act of January 23, 1974, P.L. 9, 73 P.S. § 1601–1608. For this reason, *Philips Brothers* does not apply here. *See also* Section 7(a) of the Turnpike Organization, Extension and Toll Road Conversion Act, Act of September 30, 1985, P.L. 240, 36 P.S. § 651.7(a) (providing that in law or equity the Commission is to be sued in the Commonwealth Court). Amicus curiae also cite *Pennsylvania Housing Finance Agency v. Abreen Corporation,* 84 Pa.Commonwealth Ct. 571, 480 A.2d 335 (1982), but again, *Abreen* does not control since it dealt with the jurisdiction of the Board of Claims in a suit in contract against the Commonwealth.

13. See *supra* note 5.

contend that the legislature's use of the words "continue" and "remain" in Section 2310 indicate its intent to allow *only* agencies which enjoyed sovereign immunity immediately prior to the enactment of Section 2310 to "continue" to be entitled to it. In light of the legislative history which we have just explained, however, we must disagree. We adhere to the court's reasoning in *Toombs* that the legislature intended to extend sovereign immunity to state agencies, even if the state had previously waived its immunity prior to the Sovereign Immunity Act.[14]

Accordingly, based upon the foregoing discussion, we reverse the trial court's order and remand the case for further proceedings consistent with this opinion.[15]

## ORDER

NOW, July 25, 1989, the Jelligs' motion to quash the petition for review filed with this court in the above-captioned matter is denied. Further, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter dated March 1, 1988, is hereby reversed and the case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

MacPHAIL, J., did not participate in the decision of this case.

14. Having determined that the Commission is a Commonwealth agency, we also conclude, therefore, that the Commission is not a "governmental agency."

15. The Jelligs argue that if the Commission enjoys sovereign immunity the case then fits into one of the exceptions to sovereign immunity found in Section 8522. We remand the case to have the lower court decide whether any of the exceptions apply.